## RANSTEAD *v.* FAHEY.

*(District Court, D. Maryland.* February 7, 1891.)

**1. WHARVES—OVERLAPPING VESSEL—AMOUNT OF WHARFAGE.**

*Held,* as was decided in *The Wm. H. Brinsfield,* 39 Fed. Rep. 215, that where a vessel lying on a private dock overlapped on to the adjoining wharf, the owner of such adjoining wharf could recover a *pro rata* proportion of the customary charge for wharfage on the vessel, but that, when no part of the cargo was loaded or unloaded over the adjoining wharf, the owner could not recover any part of the customary wharfage charged in respect of the cargo.

**2. SAME.**

*Held* that, where the purchaser of the cargo was bound to furnish a wharf free of expense to the vessel, and ordered the vessel to discharge at his own wharf, where she necessarily overlapped on to the adjoining wharf, and notice was given him that wharfage would be charged, there was an implied contract to pay such amount of wharfage as was legally collectible, and that the adjoining owner could sue him *in personam* in admiralty.

*(Syllabus by the Court.)*

In Admiralty.

*Robert H. Smith,* for libelant.

*Wm. H. Cowan,* for respondent.

MORRIS, J. This libel for wharfage arises out of disputes between the same adjoining wharf-owners and with reference to the same adjoining wharves which were involved in the case of *Ranstead* v. *The Wm. H. Brinsfield,* decided in this court, and reported in 39 Fed. Rep. 215. The defendant, Fahey, is the proprietor of a wharf fronting 85 feet on a private dock opening into the Patapsco river, and the libelant, Ranstead, is the owner of the next adjoining wharf. Fahey is a dealer in coal, wood, and sand, and the vessels which discharge the cargoes purchased by him at his wharf are of such length that they overlap on to Ranstead's wharf. The libelant claims to recover in this case not only a *pro rata* proportion of the customary wharfage charge for a large number of vessels loaded with wood, which by overlapping made use of a berth along-side a portion of his wharf, but also to recover a *pro rata* of the customary wharfage charge for the cargoes which were discharged from the vessels, although all the discharging was onto Fahey's wharf, and none onto the libelant's. It was held in the case of *The Wm. H. Brinsfield* that vessels at Fahey's wharf, so overlapping, were liable to pay to Ranstead his *pro rata* proportion of the customary charge for the whole berth furnished the vessel, and that, the Wm. H. Brinsfield being a foreign vessel, it was held that there was a maritime lien. This case presents two other questions: *First,* whether in addition to the proportion of the customary charge for the vessel, which is rated by her tonnage, the adjoining wharf-owner is also entitled to a proportion of the customary rate of wharfage charged for discharging the cargo, which is rated by the quantity of cargo discharged, and which with respect to wood is reckoned as so much per cord. The *second* question is whether the defendant in this case, as the purchasers of the cargoes, by whose direction they were sent to this wharf, is personally liable for either the

wharfage on the vessels or their cargoes.  As was stated as the result of the investigation in the case of *The Wm. H. Brinsfield*, there is no law or ordinance regulating wharfage in the port of Baltimore at private wharves, such as Ranstead's wharf.  In the cases involved in this controversy there was no contract or specific agreement.  The libelant repeatedly notified the defendant that wharfage would be charged him on all vessels bringing cargoes to him which overlapped.  This permissive use rendered the defendant liable, if liable at all, for such wharfage as was reasonable and customary.  It is not denied that in the port of Baltimore there are two separate wharfage charges,—one for the vessel, rated by her tonnage, and the other for the cargo, rated by the quantity of cargo loaded or unloaded over the wharf used.  None of the vessels in respect to which compensation is claimed in this case landed any cargo at all over the libelant's wharf; for although they all overlapped on to the libelant, the cargoes were all put ashore over defendant's own wharf.  With regard to the existence of custom to prorate the charge for the wharfage on the cargo thus discharged the testimony is nearly all one way, and is overwhelmingly against such usage.  The only witness to the contrary is the wharfinger at Smith's dock, and his practice there is far from showing a custom generally acquiesced in.  The numerous witnesses for the defendant embraced persons familiar with the usages at nearly all the other public and private wharves of the port, and all testified against the existence of such a custom.  In *The Wm. H. Brinsfield* it was held that, while overlapping was not the ordinary use which gives rise to a claim for wharfage, yet the occupancy of a berth in the dock extending close along-side the adjoining wharf was such a beneficial use of the adjoining owner's property, which it cost him outlay to construct and maintain, that he ought to be paid for such use.  But the charge for wharfage on the cargo landed or loaded seems to stand upon an entirely different footing, and, in the absence of statute or established custom or special contract, it does not seem to me that item of charge can be maintained.

It must be conceded that there is no actual use made upon which to base a claim for compensation.  The wharf-owner, no matter how his wharf may be occupied, is at the same expense to keep the dock dredged out to enable overlapping vessels to lay along-side, and the vessel lying there has the benefit of it; but his wharf may be built upon to the water's edge, or it may be completely covered by merchandise, so that nothing more can be landed upon it, in which case it would seem unreasonable that he should receive compensation for a constructive use which could not possibly be actually made at his wharf.  It is obvious also that for many cargoes a specially constructed wharf is necessary, so that the adjoining wharf might be unsuitable to receive the cargo, while the wharf actually used might have been fitted by special expenditure to receive it.  So long as the customary charge is made up of two distinct items,—one for the use of berth in the dock occupied by the vessel, and the other a charge for the cargo, only exacted when there is actually cargo loaded or unloaded, and only for just so much cargo as is put on

or over the wharf,—there is no reason, as it seems to me, in the absence of custom or legislation, why the adjoining owner should be entitled to charge for what he has not furnished, upon the theory of a merely constructive use. In my judgment, the libelant is entitled to his proportion of the charge for the berth occupied by the vessel, but not to anything for the wharfage on the cargoes.

The other question is whether the defendant, Fahey, is liable *in personam* for the wharfage on the vessels. The proof shows definitely with respect to some of the cargoes that by the terms of his purchase they were to be delivered to him at his wharf, free of any charge to the vessels for wharfage; and with regard to all of them the custom of the trade is proven to be that the purchaser of the cargo directs where it shall be delivered, and assumes to pay all wharfage charges at the place provided by him. It is shown that the libelant demanded wharfage of the masters of some of these vessels, and that defendant's agent in charge of his wharf and of the business of discharging cargoes there stated that the defendant would be responsible for whatever charges might be lawfully recovered, the masters having refused to deliver the wood without such an understanding. The defendant and his agents thus received the cargoes with the distinct notice of the claim, and that the defendant would be held for it, and his agents were called upon to see that the measurements of overlapping were correctly made. There can be no doubt, I think, that the whole matter was thoroughly understood, and that the defendant received the cargoes protesting that no wharfage was chargeable, but with the understanding that if any wharfage was properly chargeable he was to pay it, and that there was an implied, if not an express, contract that he would pay it. There is no question but that such an implied contract to pay wharfage is a maritime contract cognizable in admiralty. It is similar to the implied contract of the consignee of a cargo who receives it with notice of a claim for freight, and such implied contracts to pay freight are very frequently enforced in admiralty. Hen. Adm. 166. A decree will be signed in accordance with this opinion.