## THE IDLEWILD.

### SMITH v. ROBINSON et al.

(Circuit Court of Appeals, Second Circuit. December 3, 1894.)

No. 25.

WHARFAGE—ILLEGAL STRUCTURE.

R. was in possession of a wharf, a part of which extended beyond the established bulkhead line of the harbor, and constituted an invasion of the right of the public in the soil, and a technical public nuisance. There had been no interference by the public authorities with R.'s possession or collection of wharfage. *Held*, that the owners of a vessel, who had used the wharf with knowledge of R.'s possession, and of his intention to exact wharfage, could not avoid payment of such wharfage by disputing R.'s title to the land on which the wharf was erected. Lacombe, J., dissenting.

Appeal from the District Court of the United States for the Southern District of New York.

This was a libel by Jeremiah P. Robinson and others, as executors of Jeremiah Robinson, deceased, against the steamship Idlewild for wharfage. The district court rendered a decree for the libelants. 59 Fed. 628. Claimant appeals.

Henry P. Goodrich, for appellant.

Frank D. Sturges, for appellees.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

SHIPMAN, Circuit Judge. The libel in this case was filed to recover wharfage charges against the steamship Idlewild for the period of 19 days during which she lay at the libelants' wharf at the foot of Court street, in Brooklyn. The district court found that the facts established an implied agreement to pay a reasonable charge for the steamer's use of the wharf, and decreed in favor of the libelants at the rate of $5.43 per day. No objection is made to this amount, if anything is due. The appeal calls in question the right of the libelants to receive anything for the use of the wharf, because its easterly side, where the vessel lay, was six or seven feet beyond the bulkhead line, as established by law. The answer alleges that the wharf at which the steamship was made fast was not the property of the libelants.

The facts, concerning which there is no dispute, were stated by the district judge as follows:

"The evidence shows that the libelants' testator became the owner in fee of a strip of land bounded on its easterly side by the established bulkhead line, and that Downing & Lawrence became the owners in fee of the land adjoining on the westward of the libelants' testator; that the latter in 1878, in conjunction with Downing & Lawrence, built the wharf in question, which is 24 feet wide, and from 300 to 400 feet long. The middle line of this wharf was the division line between the two owners. The easterly line of the wharf, as above stated, was built out some six or seven feet beyond the proper bulkhead line. From that time until the present, the libelants, or their testator, have been in the possession and management of the whole easterly half of the wharf, and in the ordinary use thereof for wharfage purposes, and have accommodated vessels there, collecting the usual charges for wharfage. So far as the evidence shows, there has never been any interference by the state or by the city authorities with the libelants' possession or collection of wharfage. * * * No express contract is shown in the case of the Idlewild, but she went there in the ordinary course of business."

The east side of the pier is a pile pier, under which the water flows without obstruction. At low water there are probably seven feet of water close to the pier. As a rule, no cargo is handled there.

In the argument of the case, the claimant does not rely merely upon the fact that the libelants are without title to that part of the wharf where the vessel lay, but also upon the fact that they are trespassers upon the rights of the public, and that the easterly end of the wharf is technically a public nuisance. The title and the power of the several states over tide waters and over or to the land under them below high-water mark, within the borders of the respective states, were recently very carefully examined in Shively v. Bowlby, 152 U. S. 1, 14 Sup. Ct. 548, and, so far as New York is concerned, were stated in People v. Vanderbilt, 26 N. Y. 292. It is only necessary to say here that the libelants have and claim to have no

right to the soil easterly of the established bulkhead line, and that therefore the pier, as to the six or seven feet which extend beyond that line, is a purpresture, which Judge Selden, in the Vanderbilt Case, defines to be "an invasion of the right of property in the soil while the same remains in the king or the people." He defines a nuisance to be "an injury to the jus publicum, or common right of the public to navigate the waters"; and says, what has not always been recognized, "that there is a wide difference between the two, and that, although they may coexist, yet either may exist alone without the other." Whether the structure, as to its six or seven feet, constituted an actual obstruction to navigation, was not shown. It, however, projected beyond the bulkhead line as established by law, and we are of opinion that so much of a structure which, without authority of the state or of the United States, projects into navigable water in a harbor, beyond the bulkhead line established by the state, may be considered an obstruction to the commerce of the port, and, being a violation of the harbor lines which the state has rightfully established for the benefit of navigation, is technically a public nuisance. The decision of the question depends, in our opinion, upon principles which are of an elementary character. Wharfage is "a pecuniary charge, in the nature of rent, to which vessels are liable for the use of a dock or wharf" (1 Ben. Adm. § 283); in other words, for the use of real estate. The law implies a promise, by the occupant of land with the consent of the owner, to pay the owner a quantum meruit for such occupancy. 1 Archb. N. P. 98. The occupant is a tenant for the time being. The tenant who comes in under a particular landlord "cannot dispute the title of the landlord so long as it continues as it was at the time the tenancy commenced." Jackson v. Rowland, 6 Wend. 665. The libelants were not only the apparent owners, but, as between the claimant and themselves, the only owners of the enjoyed premises; for, while the people own the land under the projection beyond the bulkhead line, the state has no claim against the claimant for wharfage. It had permitted the libelants to occupy the premises and collect wharfage, as their own, from the time the wharf was built. But stress is laid upon the character of the libelants' possession, which was a trespass, and the character of the structure, which, in the eye of the law, is a public nuisance. The strength of a tenant's defense against the payment of rent is not enhanced by the fact that he can justly apply harsh epithets to the character of the landlord's title. For example, it was no defense against the payment of rent by a tenant of glebe land that the rector had obtained the living illegally, and that thereby his title was avoided. Cooke v. Loxley, 5 Term R. 4; Hodson v. Sharpe, 10 East, 351. The mere fact that a structure which is permitted by the state can be technically called a public nuisance does not enable persons who use the structure, with knowledge that for its use payment is required by the owner, to escape payment. A railroad corporation which had occupied by its trains the railroad bridge owned by another could not avoid the payment of the agreed tolls which had become due, upon the ground that the bridge had been declared to have trespassed upon the rights of the public, and had been adjudged

to be a public nuisance. The existing obligations of the lessor and lessee, as between themselves, would not be affected by such a declaration, however well authorized.

The doctrine of estoppel is not confined to the case of an occupant of land who is strictly a renter, and whose debt is strictly rent. Thus, in Eastman v. Tuttle, 1 Cow. 248, it was held that "in assumpsit by A. against B. for depasturing and keeping on hay the cattle of B., at his request, on land in A.'s possession, B. is estopped to show that the title of the land was not in A., but in B., at the time the services were performed." It is, moreover, a general principle that one who enters into a contractual relation with another is estopped from asserting, at variance with his contract, a hostile title to the subject-matter not subsequently acquired. Kinsman v. Parkhurst, 18 How. 289; Board v. Allen, 99 N. Y. 539, 2 N. E. 459. The decision in The Idaho, 93 U. S. 575, respecting the duty of the bailee of personal property to deliver it to the true owner, rather than to the bailor, is in conformity with the principle which has been stated, because the contract of bailment is to restore the property, or to account for it; "and he does so account for it when he has yielded it to the claim of one who has right paramount to that of his bailor." In this case, the shipowners had impliedly promised to pay for the individual benefits which they received from the use of the wharf, and, so long as the state permits it to be used, their contracts must be performed.

The decree of the district court is affirmed, with interest and costs of this suit.

LACOMBE, Circuit Judge (dissenting). I am constrained to dissent from the opinion of the court. The case seems to me distinguishable from the authorities cited as to the tenant's liability for rent when the landlord is a trespasser. This particular structure is illegal, not because the apparent owner has built it upon the land of another, who might himself have built it, had he chosen so to do. It is a structure whose erection by any one, whether a private person or not, is expressly prohibited by the sovereign power. No mere failure to prosecute by the public officers whose duty it is to cause its removal can change its character. I concur with the statement in the opinion of the court that, although built on land belonging to the state, "the state has no claim against the claimants for wharfage"; but I cannot see how the persons who put the obstruction there can have any better claim. Moreover, I do not think a court of admiralty should lend its aid to individuals who, not only without authority, but in flat defiance of the express orders of the state, have placed an obstruction to navigation in that part of a water way which has been reserved as a fair way for the vessels of all comers, and who seek to make a profit out of the transaction. If claimant had used so much of libelants' structure as was lawfully erected, the case might be different; but, so far as the facts show, the Idlewild simply tied up at the outer end of the wharf, and did not use any part of it for a landing. I am unable to differentiate this case from one where a private person, having driven two piles into the channel

of a public watercourse six feet from shore (the state forbidding the placing of any such obstruction therein), should seek the aid of the court to recover compensation from a vessel which tied up to the piles, and which, had he not placed them there, might have anchored herself, bow and stern, in the same place.