A. BIGELOW ADAMS *vs.* JOHN R. WHITE & SON, INC.

APRIL 1, 1918.

PRESENT: Parkhurst, C. J., Sweetland, Vincent, Baker, and Stearns, JJ.

*(1)    Wharfage.*

The use of a wharf for berthing purposes will support a claim for wharfage, under an implied contract.

*(2)    Wharfage.*

The use of a wharf by overlapping will support a claim for wharfage, although defendant was not the owner of the vessels which discharged at his wharf the cargoes purchased by him, where defendant ordered such vessels brought to its wharf for the purpose of discharging their cargoes, and was aware that every vessel brought to its wharf by its

order would overlap a neighboring wharf, and had been notified that it would be held responsible for such use of plaintiff's wharf.

*(3)   Wharfage.   Actions.*

Under the saving clause of the Judiciary Act of 1789 an action in personam can properly be brought in a State Court for wharfage under an implied contract.

*(4)   Wharfage.   Evidence.*

In an action for wharfage where plaintiff had testified that he was familiar with the value of wharf properties on both sides of a river and kept himself posted as to rentals of the same, evidence by him as to fair rental value of the privilege of overlapping enjoyed by defendant while discharging vessels at its dock was properly admitted.

*(5)   Wharfage.   Evidence.*

In an action for wharfage, a real estate broker was properly permitted to explain in what way there had been an increase in the value of water front properties as stated by witness in answer to a previous question.

*(6)   Wharfage.   Evidence.*

In an action for wharfage, evidence tending to show that defendant had long enjoyed by permission the privilege of overlapping; that it had for a long time paid plaintiff monthly a certain sum therefor; that during the period sued for it had continued to make use of plaintiff's wharf in the same manner as formerly; that the wharf was in the same condition as when defendant was formerly using it and that plaintiff had leased the wharf for $400 more a year than had been paid under a former lease which contained a privilege of use by defendant, was admissible as to the value of the use of the property by defendant.

*(7)   Wharfage.   Damages.*

In an action for wharfage, where defendant offered no evidence on the question of damages, while there was evidence on the part of plaintiff upon which the jury could properly award as large a sum as given, a verdict approved by the trial judge, will not be disturbed.

ASSUMPSIT.    Heard on exceptions of defendant and overruled.

BAKER, J.    This is an action of assumpsit brought to recover compensation for the use by the defendant (as alleged in the first count of the amended declaration) from January 1, 1913 to October 1, 1915, of the plaintiff's wharf "and the berth adjacent thereto by overlapping on the wharf of said plaintiff, and occupying the berth in front thereof, and at times making fast thereto, as and when it

deemed it convenient or desirable, when discharging vessels" at defendant's wharf under notice before given that "the rent or hire" "for such privilege and the use of said wharf and said berth in manner as aforesaid" would be twenty dollars per month.

The common counts included one "for so much money for the use and occupation of a certain messuage or tenement or wharf property belonging to the plaintiff . . . by berthing, occupation, overlapping or making fast thereto by the said defendant, for the space of thirty-three months before then elapsed," etc., and a count for interest. The plea was the general issue. The case was tried in February 1917, and a verdict was rendered in favor of the plaintiff in the sum of $682.

A motion of the defendant for a new trial was denied. The case is before this court on defendant's bill of exceptions, which contains 75 exceptions, 72 of which relate to the admission or exclusion of testimony, the 73rd to the refusal of the court to direct a verdict, the 74th to a portion of judge's charge to the jury and the 75th to the denial of the motion for a new trial.

The adjacent wharves of the plaintiff and defendant are described in the reported case of *Adams* v. *John R. White & Son*, 38 R. I. 240, which was between the same parties and in which the plaintiff was permitted to recover compensation for the use of his wharf by the defendant for the eight months preceding January 1, 1913, in substantially the same manner as is alleged and shown in the present case. This case, therefore, seems to be ruled by the opinion in that case unless some new question is raised which may affect the conclusion there reached or unless the testimony now presented is so materially different as to relieve the defendant from liability. As to the latter point, in the former case the defendant offered no testimony; in the trial of the present case one witness, Mr. Merwin White, the president and general manager of the defendant corporation, testified for the defendant. The manager in his direct

examination testified that the defendant owned no barges, that it had no control over the barges discharging at the South Water street wharf, and that the captains had absolute charge of their barges. He also testified as to previous payments for use of the plaintiff's wharf and as to the fact of, and reason for, discontinuing them. In cross-examination he said the defendant provided the berth for the barges bringing coal to it; that all the barges containing coal for the defendant, which were taken to the South Water street wharf, were taken there by order of the defendant; that none of the barges could discharge at defendant's South Water street dock without overlapping some adjacent dock; that some of the barges carried more coal than the South Water street pocket could take, and in consequence they would be partially discharged at one of the other docks of the defendant and then be taken by defendant's order to South Water street to finish the unloading.

The defendant considers and discusses the last three exceptions together and in so doing claims (1) that the plaintiff has no right in law to maintain an action in assumpsit "for the overlapping of his wharf property by a vessel in navigable waters which is unloading its cargo at an adjoining wharf;" (2) that he has no right in law to maintain such an action against the owner or lessee of the adjoining wharf property; and (3) that he cannot maintain such action against any one for compensation for overlapping "based not upon the actual time of such overlapping but upon monthly or yearly periods, regardless of the number of times that such overlapping occurs."

We will consider these claims. We are of course not considering moot questions, but a case as it is presented by the evidence. Claim (1) is not an accurate statement of plaintiff's case, for he is suing not only for overlapping by a single vessel, but for the overlapping his wharf and for the occupying of the berth in front thereof, and for the making fast thereto on numerous occasions by many vessels, as appears by his declaration and the evidence he offers.

*Adams* v. *John R. White & Son*, 38 R. I., *supra*, was an action of assumpsit. In that case there was some evidence of an express contractual relation between the parties for the first one or two of the eight months for which recovery was had but not for the remainder of them. In this case we find no evidence of an express contract. The plaintiff produced testimony showing that 48 barges were taken to the South Water street dock at the order of the defendant by the Providence Steamboat Company between January 1, 1913 and October 1, 1915, giving dates and names of barges, and it appeared by defendant's witness that in addition other barges were taken there direct from the stream, but how many the witness was unable to say. All of these barges overlapped the plaintiff's wharf, some as many as 90 feet, and most of them ran lines and made fast to posts or spiles on the Adams' wharf at Ward street. The plat in evidence shows that the plaintiff owns the land bordering on Providence River next north as well as next south of Ward street. In the absence of evidence to the contrary the presumption is that the plaintiff owns the fee of Ward street adjacent to his land subject at most to an easement therein as a way on the part of the public.

The evidence shows that the west end of Ward street is portion of the wharf over which the plaintiff alone is shown to exercise control by leasing it to others. The location and use of the posts or spiles to which the barges were fastened would seem to indicate that they were there to furnish the means by which vessels might safely berth, and that they were part of the equipment of the wharf. At all events it is evidence from which the jury might properly find that by the overlapping and by fastening their lines to the posts the barges were using the plaintiff's wharf for berthing purposes. Such use would support a claim for wharfage.

In *Ex Parte Easton*, 95 U. S. 68, on page 73, the court says, "Compensation for wharfage may be claimed upon an express or an implied contract, according to the circum-

stances. When a price is agreed upon for the use of the wharf, the contract furnishes the measure of compensation; and when the wharf is used without any such agreement, the contract is implied, and the proprietor is entitled to recover what is just and reasonable for the use of his property and the benefit conferred." See also the *Idlewild*, 64 Fed. 603, at page 605.

In *Ranstead* v. *Fahey*, 44 Fed. 805, the parties were owners of adjacent wharves. The defendant dealt in coal, wood and sand. He did not own the vessels which discharged at his wharf the cargoes purchased by him. They were of such length that of necessity they overlapped plaintiff's wharf. Plaintiff notified defendant that he would be charged wharfage. The court held that there was an implied contract; although there as here the defendant claimed that no wharfage was chargeable to him.

(3)   Of course, if there is an implied contract a common law action will lie and the action *in personam* can properly be brought in a State court under the saving clause of the Judiciary Act of 1789. 1 Am. & Eng. Ency. L. 648 and cases under note 5. We are of opinion, therefore, that the plaintiff can maintain an action in assumpsit against some one for such use of his wharf as he has shown.

(2)   Can he maintain it against the defendant, who is owner or lessee of the adjacent wharf to the south. The defendant's argument before the trial judge in support of its motion to direct a verdict (as set out at length in the transcript) as well as before this court is in substance that the action cannot be maintained against it because it is owner of none of the barges discharging coal at its wharf, and because also, while the barges are brought to the wharf by its orders, after a barge is once placed alongside of the White wharf "the captain of that barge" controls her "from that time on." In other words, the claim is that if the plaintiff has any right of action it is to be enforced only against each vessel by a proceeding *in rem* or against the owner thereof by an action *in personam*. While procedure

in this manner may be open to the plaintiff we think he may have another remedy. Here is the situation disclosed. For a period of nearly three years the defendant, whenever for the convenient transaction of its business it found it desirable to place its coal in the coal pocket on its South Water street wharf, ordered the barges conveying its coal brought to that wharf in order to discharge the coal. It undertook to provide the berth for them to do this. It knew of no barges coming to this port which are not longer than the frontage of its South Water street wharf, and therefore was aware that every barge brought to its wharf by its order would overlap a neighboring wharf. It is in evidence that many of these barges are so long that they overlap the plaintiff's wharf for a distance considerably in excess of the entire frontage of defendant's wharf and also that they tie up to plaintiff's wharf so that they are in part berthed there. All of this has been done after notice by the plaintiff to the defendant that he would hold it responsible for this use of his wharf. While, of course, the captain of a barge controls her as she lies at the wharf, moves her back and forth as he sees fit in order to take out the coal from the different hatchways, and in so doing may change her moorings from one post to another, all of these things are consequent upon, incidental to, and in a sense necessary steps in the landing of the coal of the defendant at the place he selects and which he undertakes to provide. All that is done is for its benefit. Everything done naturally follows and is involved in the initial act of the defendant in ordering the barges to its wharf for the purpose of discharging its coal. We are of opinion, therefore, that the plaintiff can maintain an action of assumpsit against the defendant by virtue of the familiar maxim *Qui facit per alium, facit per se.* In *Ranstead* v. *Fahey, supra,* the syllabus by the court in part is "Where the purchaser of the cargo was bound to furnish a wharf free of expense to the vessel, and ordered the vessel to discharge at his own wharf, when she necessarily overlapped on to the adjoining wharf, and notice was given him that

wharfage would be charged, there was an implied contract to pay such amount of wharfage as was legally collectible, and that the adjoining owner could sue him *in personam* in admiralty."

In accordance with the views already expressed the 73rd and 74th exceptions are overruled, as is also the 75th so far as everything is therein involved except as to the amount of the verdict, which will be referred to later.

All of the other exceptions except No. 37 (which is not pressed) relate to the admission of testimony. The defendant groups them thus: exceptions 1, 2, 3 and 33, as taken to questions relative to any difference in the use of plaintiff's wharf by defendant before and after the beginning of the time for which the present claim is made; exceptions 4 to 30 inclusive, 50 to 62 inclusive, 64 to 72 inclusive, as taken to question concerning "rent" or "compensation" paid by defendant to plaintiff in previous years; exceptions 31, 38 and 39 as taken to questions concerning the value of defendant's privilege to overlap; exceptions 32 and 36 as taken to questions concerning the alleged privilege of defendant to overlap; exceptions 49 and 63 as taken to questions as to berthing of barges by order of defendant; and exceptions 34, 35, 40 to 48 inclusive as taken to questions concerning the reservation in favor of defendant in a lease between the plaintiff and the Providence, Fall River & Newport Steamboat Company whereby the latter hired the plaintiff's wharf for the entire period for which he now sues. The defendant only separately discusses exceptions 31, 38 and 39. Exception 31 was taken to a question put to the plaintiff as to a fair rental value of the privilege of overlapping enjoyed by defendant while discharging vessels at its dock. The plaintiff had testified that he was familiar with the value of wharf properties on both sides of Providence River and that he kept himself posted as to rentals of the same. We think there was no error in permitting the question to be answered. Exception 38 was taken to an unanswered question. Exception 39 was taken to a question asking a real estate broker

to explain in what way there had been an increase in the value of water front properties as the witness had stated in answer to a previous question. There was no error in permitting the answer. Exceptions 32, 34, 35, 36, 40 and 41 (the first of the two numbered 41) are taken to questions asked to establish the fact that the plaintiff had given and reserved to the defendant the privilege of overlapping. There is no merit in the exceptions. Exception 49 was taken to a question to Mr. White asking him if, during the time he had been treasurer, the company had not "exercised the privilege of berthing any barge you desired to discharge at South Water street in Mr. Adams' berth or dock." To this the witness replied in the negative. The defendant could not have been prejudiced thereby. Exception 63 was taken to the court's permitting this question to be put to Mr. White, namely: "Knowing that you could not give a complete berth to any of those barges, you ordered them there, did you not?" To which the answer was, "Well, I didn't personally but the concern did." There was no error in this. The other exceptions were taken to questions intended to show that the defendant had long enjoyed by permission this privilege of overlapping, that it had for a long time paid the plaintiff monthly a sum certain therefor, that during the period sued for it had continued to make use of plaintiff's wharf in the same manner as formerly, that plaintiff's wharf is in the same condition now as when defendant was formerly using it as has been described, and that said steamboat company at the time of the trial was paying rent for the Adams' wharf under a lease, containing no reservation of its use by defendant, $400 more a year than it had paid under the old lease containing the privilege of use by defendant. We think all this testimony was pertinent to the question of the value of the use of plaintiff's property by the defendant, and all these exceptions to the admission thereof are overruled without being discussed in detail.

By its claim (3) the defendant seems to urge that the verdict is not entitled to stand because the jury apparently

have assessed the damages at $20 a month, in accordance with the account filed by the plaintiff, instead of making a calculation based upon the number of overlappings and the length of time thereof. The defendant offered no testimony on the question of damages, so that the jury in considering (7) that question had before them only such testimony as was presented by the plaintiff. They had before them the fact that the defendant had at one time paid a definite sum each month for the privilege, irrespective of however much the actual use of plaintiff's property might vary from month to month. There were estimates of the value of the privilege by the year by experts considerably in excess of the account sued for, as well as the evidence of actual increased rent under a lease excluding the privilege. It is clear that there was testimony in the case upon which the jury could properly award as large a sum as they have given. The verdict has been approved by the trial judge. We therefore discover no valid reason for disturbing his denial of the motion for a new trial on the ground that the damages are excessive.

All the exceptions are overruled and the case is remitted to the Superior Court for the entry of judgment on the verdict.

*Frank Healy, George T. Marsh*, for plaintiff.
*Boss & Barnefield*, for defendant.