JESSIE WHITTAKER v. M. STANGVICK and Another.[1]

March 22, 1907.

Nos. 14,972—(163).

**Increased Care Necessary with Increased Hazard.**

As the hazard from the use or threatened use of dangerous instrumentalities increases, the responsibility of the person employing them becomes stricter, and may amount to insurance of safety. All remedial resources of law and equity may be exercised to prevent peril, by reason of such use, to person or property, or to prevent conduct likely to result in breach of peace.

**Trespass.**

To constitute trespass to land, neither the extent of the damage nor the form of the instrumentality by which the close is broken is material.

**Injunction against Shooting.**

Shooting guns over another's land, so as to cause considerable damage, is an enjoinable wrong.

**Same.**

The court found as facts that plaintiff owned a narrow duck pass between two navigable lakes; that defendants threatened to erect blinds in

[1] Reported in 111 N. W. 295.

front of said pass, three hundred twenty five feet away, with intention
of shooting ducks flying over the pass; that in so doing defendants were
liable to shoot over plaintiff's land, and to considerably impair the value
of plaintiff's shooting privilege. The court concluded as a matter of law
that plaintiff was not entitled to an injunction. *Held* error.

Action in the district court for Otter Tail county to enjoin defend-
ants from constructing certain covers or blinds, from hunting or shoot-
ing ducks or other water fowl therefrom, and from shooting over or
across plaintiff's land. The case was tried before Baxter, J., who
found in favor of the defendants. From an order denying a motion
for a new trial, plaintiff appealed. Reversed.

*Parsons & Brown,* for appellant.

*N. T. Moen* and *F. H. Peterson,* for respondents.

JAGGARD, J.

The plaintiff and appellant sought to perpetually enjoin defendants
and respondents from constructing covers or blinds on the surface
of a lake in front of a strip of land, to which plaintiff claimed owner-
ship, separating two navigable lakes; from hunting or shooting ducks
or other water fowl therefrom; and from shooting across or over the
strip of land. The court ordered judgment for the defendants, after
trial. This appeal was taken from the order denying a motion for
a new trial. The essential question here is whether the decision was
justified by the evidence and was consistent with law.

The court found the facts as follows: The plaintiff owned the long,
narrow strip, and accretions, extending to a creek connecting the
waters of the lakes, which formed what is known as a "duck pass."
Although there was a public highway over the duck pass, by virtue
of an agreement with the supervisors of the township the plaintiff had
the right of fishing and hunting thereon to the same extent as though
the road had not been laid out. The defendants and other persons
wrongfully had previously gone on plaintiff's land at the highway and
shot ducks and water fowl, and now threaten to continue to do so.
The effect of the acts was to practically monopolize the shooting priv-
ileges and to largely impair the value of the privileges to the plaintiff
and her guests. The defendants had been previously restrained by
an order of the district court from going upon the highway for the

purpose of hunting, and from hunting or shooting ducks or other water fowl upon the highway. "That the said defendants have heretofore erected, and intend and threaten to hereafter erect, upon the surface of Upper Ten Mile lake, directly in front of the said pass, and at a distance of about three hundred twenty five feet from the shore line thereof, certain covers or blinds, with the purpose and intention of shooting therefrom the wild ducks and other water fowl flying over said pass, and that in hunting said game defendants are liable to shoot over plaintiff's said land. That said lake is of large extent, and it is not necessary for the mere purpose of hunting or shooting the said wild fowl, that said defendants should locate such cover or blinds at the place above mentioned. That the probable result of such acts on the part of the defendants will be to injuriously affect the facilities for shooting wild fowl afforded by said pass; and as a consequence thereof the value of said shooting privileges will be to a considerable extent impaired."

There was testimony to the effect that a shotgun would carry shot "probably four hundred feet, maybe more than that." In consequence, when persons in the blind would shoot towards plaintiff's place, "the shot could not help but drop around [plaintiff's] place, on the point, in the woods, or in the timber, or across this point here. A certain amount of the shot would go over the pass. * * * From thirty to fifty per cent. of the shot would go over the land and on the pass. It depends on the winds, and which way the ducks fly. * * * In shooting ducks flying from the north, south, some of these ducks in the ordinary course of shooting naturally would fall when they were killed, on this pass."

1. The first question is whether the facts found show a trespass. Defendants urge that the falling of the shot and of ducks on plaintiff's land not having been shown to "become a nuisance to her, certainly could not be sufficient to constitute a trespass on the part of the defendants. The old maxim that the law does not concern itself with trifles might well be invoked here." This contention involves a misapprehension of the law of trespass.

With respect to damages as an essential, the common law recognizes two kinds of actions. In the first class there is a direct invasion of another's person or property without permission, which is actionable

per se, or which gives rise to a presumption of at least some damage, without proof of any actual damage. Unpermitted contact with the person constitutes assault and battery. Unpermitted invasion of premises constitutes a trespass quare clausum fregit. In the second class, actions on the case, in which the damages are indirect and consequential, there can be no recovery unless the plaintiff shows, as an essential part of his case, that damages, pecuniary in kind, proximate in sequence, and substantial in extent have resulted. In trespass quare clausum fregit, it is immaterial whether the quantum of harm suffered be great, little, or inappreciable. It is true that in McConico v. Singleton, 2 Mill, Const. 244 (S. C. 1818), Mr. Justice Johnson held that the owner cannot prevent others from hunting wild game on uninclosed and uncultivated lands, because to recover in trespass you must prove some actual injury. One quaint reason assigned was the public concern that there should be hunters to form a competent militia to oppose that great danger to free institutions, a standing army. It is elementary that the general rule is otherwise. For example, in Patrick v. Greenway (see Mellor v. Spateman, 1 Saund. 346b), the defendant angled in plaintiff's several fishery, but caught nothing. Plaintiff had a verdict, which was sustained because of the infringement of the right which could hereafter be evidence of the exercise of the right by the defendants. And see, as to fisheries, 13 Am. & Eng. Enc. (2d Ed.) 584. As to general rule, Cooper v. Crabtree, per Jessel, M. R., 20 Ch. Div. 592; Feize v. Thompson, 1 Taunt. 121; 1 Street, Foundation of Liability for Tort, p. 19; 46 Cent. Dig. "Trespass," § 15, col. 271; Id. § 141, col. 480. Nowhere is the doctrine better expressed than by Lord Holt, in Ashby v. White, 2 Lord Raym. 938, 1 Smith's Lead. Cas. 268: "If a man gives another a cuff on the ear, though it cost him nothing, no not so much as a little diachylon, yet he shall have his action; for it is a personal injury. So a man shall have an action against another for driving over his ground, though it do him no damage; for it is an invasion of his property, and the other has no right to come there."

It is also entirely immaterial by means of what instrumentality the trespass is committed. See 46 Cent. Dig. "Trespass," § 8, col. 256. One maliciously annoying another by means even of loud noises, consisting of pounding on tin pans, etc., and thereby injuring the health

and business of the latter, is guilty of trespass and liable for the injuries sustained.   Shellabarger v. Morris, 115 Mo. App. 566, 91 S. W. 1005.   To the same effect, see Donahue v. Keystone, 181 N. Y. 313, 317, 73 N. E. 1108 (holding specifically that escape of gas from street mains may constitute a trespass), and Adams v. Rivers, 11 Barb. 390. "No doubt," said Landon, J., in Forbell v. City, 164 N. Y. 522, 526, 58 N. E. 644, 646, 51 L. R. A. 695, 79 Am. St. 666, "trespass may be committed by the projection of force beyond the boundary of the lot where the projecting instrument is operated.   Injuries caused by explosion are familiar instances."

More specifically, in the celebrated case of Pickering v. Rudd, 1 Starkie, 56, 1 Ames' Cases on Torts, 42, Lord Ellenborough said:   "I recollect a case where I held that firing a gun loaded with shot into a field was a breaking of the close.   The learned judge on the circuit with me doubted upon the point, but many with whom I afterwards conversed on the subject thought I was right, and the judge himself who at first differed with me was afterwards of the same opinion; but I never yet heard that firing in vacuo could be considered as a trespass.   No doubt, if you could prove any inconvenience to have been sustained, an action might be maintained; but it may be questionable whether an action on the case would not be the proper form."   To the same effect, see Prewitt v. Clayton, 5 T. B. Mon. 4.   If a hunter shoot where he has a right to kill a bird in the air, and step upon the land of another to pick up the dead bird, the act of going onto the land to pick up the bird relates to the act of shooting, and the whole act one transaction, constituting a trespass at common law apart from the statute.   Earl, C. J., in Osbond v. Meadows, 12 C. B. (N. S.) 10, 15.   And see Mayhew v. Wardley, 14 C. B. (N. S.) 550; State v. Shannon, 36 Oh. St. 423, 38 Am. 599.

It is true that in some of the cases referred to, and in L. Realty Co. v. Johnson, 92 Minn. 363, 100 N. W. 94, 66 L. R. A. 439, 104 Am. St. 677, the holding that trespass or some other enjoinable wrong existed was based upon an abuse of the highway.   And see Harrison v. Duke, [1893] 1 Q. B. Div. 142; Hickman v. Maisey, [1900] 1 Q. B. Div. 752; Queen v. Pratt, 4 El. & Bl. 865.

Such cases are, however, at least significant illustrations of the extent to which the strictness of the law of trespass to realty, greater

than in cases of trespass to the person, has been carried.   1 Street on Foundation of Liability for Tort, 24.

Moreover, here the defendants proposed to inclose and make several to themselves that which belonged to the many.   Did not the blind amount to "a clandestine encroachment and appropriation of navigable waters, which should be common to the public"?   The precise nature, however, of defendants' act, whether it amounted to a purpresture (23 Am. & Eng. Enc. [2d Ed.] 528; 7 Words & Phrases, 5867), or to nuisance (see People v. Park, 76 Cal. 156, 18 Pac. 141), or to both (see People v. Vanderbilt, 26 N. Y. 287; People v. Gold Run, 4 Pac. 1152, 66 Cal. 138, 56 Am. 80; The Idlewild, 64 Fed. 603, 12 C. C. A. 328), or to neither, need not be here determined.   The defendants' right to properly use the navigable lakes did not give them any more right to shoot over plaintiff's land than a neighboring proprietor would have had to so shoot from his own premises.   It has been definitely determined in this court that the neighboring proprietor may not lawfully do so.   Lamprey v. Danz, 86 Minn. 317, 90 N. W. 578.

The mere fact that damage from falling shot or birds would be insignificant, as has been shown, has no logical bearing at all upon the question.   The record, besides, conclusively shows substantial damage to the premises.   At common law, trespass or case would have lain.   The inherent danger to landowners from guns in the hands of hunters, often irresponsible and reckless, and sometimes malicious, must be adequately guarded against if the law is to be more than a name.   As the hazard from the use or threatened use of dangerous instrumentalities increases, in all branches of the law, the responsibility of the person employing them becomes stricter and may amount to insurance of safety.   All remedial resources of law and equity may be exercised to prevent such peril to person or property, or conduct likely also to result in breach of peace.

2. The second question is whether or not an injunction will lie under the circumstances.   It is elementary that equity will grant that relief to prevent a threatened trespass, especially where there can be no adequate pecuniary compensation, because it would be difficult or impossible to ascertain the damage resulting from such an act, and where otherwise a multiplicity of suits cannot be prevented.   1 High,

Inj. (4th Ed.) 697; 27 Cent. Dig. "Injunction," § 86, cols. 1626, 1627; Id. § 101, col. 1663. There has been a material modification in such cases of the requirements that the injury should be irreparable and the legal remedy inadequate. The tendency of American authorities is to extend the application of the remedy, and to grant it "in many instances and under many circumstances where Chancellor Kent would probably have refused to interfere." 3 Pomeroy, Eq. Jur. 1357. In cases of continuing trespass, "there can be no question that by all the better class of authorities he [the landowner] is entitled to an injunction, even though the damages are merely nominal in a pecuniary point of view." Wood, Nuisance (3d Ed.) p. 1156, § 789. On general principles accordingly, and in view of the specific rule of this court in the duck pass cases (Lamprey v. Danz, 86 Minn. 317, 90 N. W. 578; L. Realty Co. v. Johnson, 92 Minn. 363, 100 N. W. 94, 66 L. R. A. 439, 104 Am. St. 677), there can be no doubt as to the propriety of granting an injunction in such a case as is here presented.

3. The remaining question concerns the propriety of the exclusion by the trial court of testimony tending to show that the defendants were acting from "unmixed malice." We think that in this case, which involves the express findings of the court, the plaintiff was entitled to an injunction from danger of trespass. But he was called upon to face the contention that the proposed blinds were not three hundred and twenty five feet from the land, as the court found, but six hundred feet from his land, as the defendants' evidence tended to prove. Plaintiff accordingly found it desirable or necessary to show that the defendants' proposed act was malicious, would constitute a nuisance, or would make the use of his own property imminently dangerous. He should have been allowed to show everything relevant under his pleadings reasonably tending to entitle him to an injunction. He was entitled to invoke the general principle that "intentionally to do that which is calculated in the ordinary course of events to damage, and which does, in fact damage, another, in that other person's property or trade, is actionable, if done without just cause or excuse." Bowen, L. J., in Mogul v. McGregor, L. R. 23 Q. B. Div. 598 [1892] App. Cas. 25. And see Walker v. Cronin, 107 Mass. 555.

Plaintiff has cited us, in this connection, to cases which tend more or less to apply this general principle to this particular class of cases,

namely, Young v. Hichens, 6 Q. B. 606 (disturbance of nets and waters by rival fishermen); Keeble v. Hickeringill, 11 East, 574 (wilful discharge of guns on defendant's own land to drive away wild fowl from plaintiff's decoy pond); Ibbotson v. Peat, 34 L. J. Exch. 118 (similiter); Carrington v. Taylor, 11 East, 571 (similiter). We do not here determine that plaintiff could make out a specific cause of action under this somewhat general principle. That question should be determined only upon a record which would fairly present the relevant testimony.

Order reversed.