STATE, Respondent, v. POLLOCK et al., Appellants.

(175 N. W. 557.)

File No. 4580.    Opinion filed December 16, 1919.)

1.  Game—Common Law Title to in Sovereign State—Declaratory, Regulatory Statutes, Authority of State to Make, Grounds of— Having Game in Possession, Control, Complaint, Sufficiency

At common law the title to and property in all species of wild game is declared to be vested in the sovereign, but a statute is required if state wishes to retain title thereto after the game is killed and in possession of hunters; and the power of the state to make regulations conserving game within its jurisdiction is based largely on circumstance that property right to wild game within its border is vested in the sovereign people; which principle is recognized and adopted by Laws 1909, Ch. 240, prohibiting (Sec. 19) the acquiring of property in, or subjecting to dominion or control, of any of the birds, etc., therein referred to, and declaring that they shall remain the property of the state, except that by killing, etc., same as provided by law, etc., during the non-prohibitive period, same may be used in manner and for purpose authorized by law, and providing that whenever any person kills, etc., ships or has in possession or under control any such game at time or in manner prohibited by law, he shall forfeit his right to use and possession of same and state shall be entitled to sole possession; and Sec. 26, prohibiting the having in possession or under control within this state of any specified game which has been caught, taken or killed outside this state, at a time when it is unlawful to have in possession, etc., such game if caught, etc., in this state, or which have been unlawfully taken, etc., outside this state or unlawfully shipped therefrom into this state; and Sec. 27 (Laws 1913, Ch. 200, Sec. 1, Laws 1917, Ch. 246, Sec. 1) declaring that possession, etc., of any such game the killing of which is at any time prohibited, is prima facie evidence that it was state property at the time that it was caught, killed, etc., in this state, and that such possession, etc., at any time when the killing, etc., is by state law declared unlawful, is prima facie evidence of the taking, etc., during closed season, etc., and in effect requiring the possessor to prove the contrary.    Hence, a complaint charging defendants with having in possession and under control * * perch and pickerel, between the first day of March and the first day of May,

contrary to statute, etc., charges a criminal offense under Laws
1917, Ch. 246, Sec. 1, and demurrer thereto for not stating a
public offense was untenable.

2. **Game—Hunting, Killing, Having in Possession, Citizen's Right of
   Property In—Statute Making Possession Criminal, Constitu-
   tionality Under Federal, State, Constitution, Re Property
   Rights, Due Process—Police, Power—Statutory Regulation,
   Nature, Purpose of.**

   Laws 1917, Ch. 246, Sec. 1, in effect prohibiting the having
   in possession, or under control any * * perch, pickerel, etc.,
   between the first day of March and the first day of May follow-
   ing, is not unconstitutional as in violation of Const., Art. 6,
   Secs. 1, 2, concerning acquisition and protection of property,
   and due process of laws; nor is it violative of Fed. Const., Art. 14,
   prohibiting or making enforcement by a state of a law depriving
   persons of * * property without due process of law; since the
   state's authority to make regulations conserving game within
   its jurisdiction is an exercise of police power in protection of
   its property for benefit of its citizens, and it is state's right
   and duty to preserve game from greed of hunters, the right
   to kill it being a privilege granted by sovereign authority, and
   is not an inherent right in any individual, consequently nothing
   is taken from him and his constitutional rights are not infring-
   ed when he is denied the privilege, or limitations are placed on
   killing or marketing of game.

3. **Same—Forbidding Sale, Possession, of Wild Game, State Statute
   Re Killing in Other States—Police Power Over Imported Game,
   Prescribed Conditions of Enjoyment—Trespassing Hunter's
   Property Right, Nil—Conditions of Enjoyment, Statutory Con-
   ditions Re, Due Process Re.**

   One state may forbid, at any or specified time, sale or posses-
   sion of wild game, and pursuant thereto may make its statute
   applicable to game killed in other states, this regardless of
   whether the game was lawfully killed in exporting state.
   When private property is brought from one state to another
   and becomes part of mass of property in the latter, its police
   power attaches thereto the same as to property originally
   therein, and Legislature has power to subject such game to
   police regulations applicable also to domestic game, and to
   that end may forbid possession or sale thereof during prohibited
   time; the power to grant embraces power to impose conditions,
   and in granting permission of reducing wild game to possession
   with proprietory right, the state may prescribe such conditions
   of enjoyment as are reasonable and necessary to protect com-
   mon interest; and the citizen when accepting state's grant
   accepts it impressed with all restrictions and limitations laid
   upon it, and when he acquires property under such license he

does so with notice of his qualified right, and if he loses what he has taken or held possession of upon forbidden terms, he has lost nothing that belonged to him, and there has been no taking of property without due process.

Appeal from Municipal Court of the City of Watertown, South Dakota. Hon. I. H. MYERS, Judge.

The defendants, Stanley Pollock and another, were charged with having in their possession and under their control certain perch and pickerel, between the first day of March and the first day of May following, contrary to statute. From an order overruling a demurrer to the complaint, defendants appeal. Affirmed.

*Carpenter & Kremer,* for Appellants.

*Byron S. Payne,* Attorney General, and *E. R. Winans,* Assistant Attorney General, for Respondent.

(1) To point one of the opinion, Respondent cited, re common law, 2 Cyc. 306; 12 R. C. L. 684; re state authority, 12 R. C. L. 698, 699; note 3; 3 L. R. A. (N. S.) 163.

(2) To point two, Appellant cited: Fed. Const., Art. 14, Sec. 1; Const. S. D., Art. 6, Secs. 1, 2; re property rights; State v. Quarg, 5 L.R. A. (N. S.) 184, 84 Pac. 766; re police power; Cooley, Const. Lim., pp. 68, 244; People v. O'Neal, 71 Mich. 328, 39 N. W. 1; State v. McGuire, 24 Ore. 366, 36 Pac. 666, 21 L. R. A. 479; People v. Hawkins, 157 N. Y. 1, 51 N. E. 257, 68 A. S. R. 736, 42 L. R. A. 490.

SMITH, P. J. Appeal from an order of the municipal court of the city of Watertown, Codington county, overruling the demurrer of defendants to a criminal complaint which charges defendants with the crime of "having in their possession and under their control certain fish, to wit, perch and pickerel, between the first day of March and the first day of May, contrary to the form of the statute, etc."

Demurrer on the grounds:

"First, that the allegations contained in the complaint herein do not describe or constitute a public offense; second, that the complaint herein does not substantially conform to the statutes of the state of South Dakota."

The second ground of demurrer is not urged on this appeal.

Appellants' contention is that section 1, c. 246, Laws 1917, upon which the information is based, is unconstitutional and void on the grounds: First, said section is contrary to section 1, art. 14, of the Constitution of the United States; second, said section is contrary to sections 1 and 2 of article 6 of the Constitution of the state of South Dakota; third, said section is not a valid exercise of the police power of the state. Section 1, c. 246, Laws 1917, so far as material to this appeal, is as follows:

"No person shall * * * have in possession or under control, for any purpose whatever, * * * any croppies, pike, perch, pickerel, or sunfish, between the first day of March and the first day of May following."

Appellants' contention is that the statute quoted is an unconstitutional interference with the right of a citizen of the United States, or a citizen of the state, to acquire and protect property, in that any statute which interferes with this right, except in cases where the public health, morals, or safety or the general welfare authorizes such restrictions as an exercise of police power, is to the extent of such interference unconstitutional and void, and that it is not within the power of the Legislature to make the possession of property, lawfully acquired, a crime.

In support of this contention appellants' counsel cite People v. O'Neil, 71 Mich. 328, 39 N. W. 1, and State v. McGuire, 24 Or. 366, 33 Pac. 666, 21 L. R. A. 479. Appellants' counsel also cite People v. Hawkins, 157 N. Y. 1, 51 N. E. 257, 42 L. R. A. 490, 68 Am. St. Rep. 736, as defining constitutional limitations upon the exercise of the police power.

[1] At common law the title to and the property in all species of wild game is declared to be vested in the sovereign. In most of the states this principal has been expressly recognized and adopted by statutory enactments, as in this state in chapter 240, Laws 1909, § 19, whch declares that—

"No person shall at any time or in any manner, acquire any property, in, or subject to his dominion or control, any of the birds, animals or fish or any part thereof, of the kinds herein mentioned, but they shall always and under all circumstances be and remain the property of this state, except

that by killing, catching or taking the same in the manner provided by law, and for the purposes herein authorized, and during the periods when their killing is not prohibited, the same be used by any person at the time, in the manner and for the purposes expressly authorized by law, and whenever any person kills, catches, takes, ships, or has in possession or under control any of the birds, animals, or fish or any part thereof, mentioned in this chapter, at a time or in a manner prohibited by law, such person shall thereby forfeit and lose all his right to the use and possession of such bird, animal or fish or any part thereof, and the state shall be entitled to sole possession thereof."

Section 26 of the same chapter declares that—

"No person shall at any time, have in his possession or under his control within this state, any bird, animal or fish or any part thereof, which has been caught, taken or killed outside of this state, at a time when it is unlawful to have in possession or under control, such birds, animals or fish, or parts thereof, if caught, taken or killed in this state, or which have been unlawfully taken or killed outside this state or unlawfully shipped therefrom into this state."

Section 27:

"The possession or having under control by any person of any bird, animal or fish, or any part thereof, the killing of which is at any time prohibited, shall be prima facie evidence that it was the property of this state at the time it was caught, taken or killed and that it was caught, taken or killed in this state; also that such possession or having under control at any time when the killing, taking or possession thereof is by the law of this state declared to be unlawful, shall be prima facie evidence that such taking and killing occurred during the closed season, to disprove which it shall be necessary for the party in possession thereof to show that at the time it was caught, taken or killed, it was lawfully caught, taken or killed, outside or within this state, or that it was lawfully caught, taken or killed within this state, and that he was lawfully in possession thereof."

Section 27, supra, has not been amended or repealed by any subsequent legislative enactment and remains in full force and

effect in this state.  See chapter 200, Laws 1915, and chapter 246, Laws 1917.

[2, 3] Upon demurrer, therefore, the complaint is sufficient to charge a criminal offense under section 1, c. 246, Laws of 1917.  The constitutionality of statutes regulating and controlling the right of citizens to hunt, take, kill, or have in possession, every species of wild game and fish, is recognized in every state in the Union.  The decision in People v. O'Neil, 71 Mich. 328, 39 N. W. 1, and State v. McGuire, 24 Or. 366, 33 Pac. 666, 21 L. R. A. 479, appear to have been overruled by People v. O'Neil, 110 Mich. 324, 68 N. W. 227, 33 L. R. A. 696, and State v. Schuman, 36 Or. 16, 58 Pac. 661, 47 L. R. A. 153, 78 Am. St. Rep. 754.

In 12 R. C. L. 685, the law is thus stated:

"The title of the state is acquired by means of the common law and no statute is necessary to invest it with the ownership of the wild game. A solemn declaration that the title to wild game is in the state has no purpose except to make written law out of unwritten law. But a statute is required if the state wishes to retain title to game after it has been killed and possessed by a hunter; * * * the ownership of game being in the first instance lodged in the people of the state, may be reserved by them, or they may permit individuals to acquire title to such as are reduced to possession. Any ownership which an individual is allowed to acquire may be subject to such conditions and limitations as the people acting through their legislative agents, may wish to impose. * * * Id. (691). There is no dissent from the general proposition that the state has the authority to make regulations tending to conserve the game within its jurisdiction. This power of the state is based largely on the circumstance that the property right to the wild game within its borders is vested in the people of the state in their sovereign capacity; and as an exercise of its police powers and to protect its property for the benefit of its citizens, it is not only the right but it is the duty of the stat to take such steps as shall preserve the game from the greed of hunters. * * * The right to kill the game is a boon or privilege granted either expressly or impliedly by the sovereign authority and is not a right

inhering in any individual; and consequently nothing is taken from the individual and his constitutional rights are not infringed when he is denied the privilege or limitations are placed on the killing or marketing of game."

In 12 R. C. L. 689 et seq., it is said:

"It is generally held that one state may legally pass a statute which forbids, at any time or at a specified time, the sale or possession of certain wild game, and as a means of preventing evasion of its game laws, it may make such statute applicable to game killed in other states, though thereby commerce between the states is obstructed to a certain extent. It is immaterial on this question that the game was lawfully killed in the exporting state. When private property is brought from one state to another and becomes a part of the mass of the property in such latter state, the police power of such state attaches to the property in the same way as it does to property originally therein. Thus if dead game is brought within the state and it is thought reasonably necessary to subject it to the same police regulations as apply to game within the state, the Legislature has power to do so. * * * A state Legislature in order effectively to enforce its regulations against the killing of certain game during a closed season, may forbid the possession or sale, or offering for sale, of such game during the prohibited time. * * * The power to grant embodies the power to impose conditions; and in granting the privilege of reducing wild game to possession with proprietary right, it is competent for the state to prescribe such conditions of enjoyment as are reasonable and necessary to protect the common interest. The citizen when he accepts the state's grant, accepts it impressed with all the restrictions and limitations laid upon it, and when he acquires property under such license he does so with full notice of his qualified right; and so, if he loses that which he has taken or held possession of upon forbidden terms, he has lost nothing that belonged to him, and there has been no taking of property without due process of law or without just compensation. Regulations of the nature mentioned above may be made applicable to game killed in another state or to that raised in captivity."

The principles stated above are applicable both to wild game and fish.  11 R. C. L., pp. 1041, 1050, 1052.

The decisions cited to sustain the conclusion thus clearly and concisely stated are so uniform that a discussion of or reference to them would be an idle task.  See, also, People v. Clair, 221 N. Y. 108, 116 N. E. 868, L. R. A. 1917F, 766.

The order of the trial court is affirmed.