**STATE of South Dakota, Plaintiff and Appellee,**

v.

**Pat TRACY, Defendant and Appellant.**

No. 18978.

Supreme Court of South Dakota.

Considered on Briefs Sept. 13, 1995.

Decided Oct. 25, 1995.

Mark Barnett, Attorney General, Craig M. Eichstadt, Deputy Attorney General, Pierre, for plaintiff and appellee.

James P. Hurley of Bangs, McCullen, Butler, Foye & Simmons, Rapid City, for defendant and appellant.

GILBERTSON, Justice.

Tracy appeals his conviction under SDCL 41-1-8 for intentionally interfering with the lawful hunting of the Craig Ambach hunting party. Tracy argues the Ambach party was not lawfully hunting and that his conduct did not constitute criminal interference. We reverse the conviction based on our statutory construction of SDCL 41-9-1.1.

### FACTS

Pat Tracy is the farm manager for JES Farms, a farm owned and operated by Harvey and Andrea Sheehan. The Sheehan farm is located in both Sully and Hughes counties along the Grey Goose Road. Apart from Tracy's farm management duties, Tracy also guides hunters to commercial goose hunting pits on the Sheehan property. According to Tracy, these hunters pay $50 per day per gun for the privilege of hunting geese from the pits and an estimated 1,000 hunters per year hunt on Sheehans' property.

On November 14, 1993, approximately forty to fifty hunters were commercially goose hunting in the Sheehan hunting pits. Tracy and his brother, Brian, drove the hunters back and forth between their vehicles at the clubhouse and the pits. During one such run, Tracy observed the Craig Ambach party hunting in an area which later turned out to be within the section line right-of-way on Sheehans' farmland. The Ambach party had entered the farmland by turning west off the Grey Goose Road, opening and proceeding through a gate, and driving along the section line. The Ambach party drove on a farm trail, made by Sheehan farm equipment and vehicles, where it coincided with the section line and on cultivated land where the trail

veered off and away from the section line. At one point, when confronted with a marshy slough that crossed the section line, the Ambach party parked its vehicle where the trail veered off the section line and walked through the wetland area. The Ambach party continued walking west along the farm trail which again coincided with the section line, with guns sheathed and unavailable for hunting. They stopped and hunted at some point along this trail on the right-of-way. (See attached map which indicates the right-of-way and the path taken by the Ambach party).

The Ambach party was confronted by Brian and Pat Tracy, arriving in separate vehicles, who demanded to know what the Ambachs were doing there and asked to see the Ambachs' hunting licenses, informing them that they were on private property and were trespassing. The Ambach party's response was to show the Tracy brothers their licenses and tell the Tracys to call a game warden or sheriff if Tracys believed Ambachs were trespassing. Pat and Brian Tracy then left the scene and Pat Tracy returned a short while later and proceeded to take pictures of the Ambach party and the area. The trial court found that Pat, in parking and circling the Ambach party with a vehicle, specifically intended to harass the Ambachs and prevent the lawful taking of game. Shortly thereafter, the Ambach party ceased hunting and left the area.[1]

### STANDARD OF REVIEW

■ Tracy attacks the sufficiency of the evidence to support the trial court's findings regarding the location of the Ambach hunting party and Tracy's intentions in confronting the party. We will not disturb those findings unless they are clearly erroneous. *State v. Goodroad,* 521 N.W.2d 433, 434 (S.D. 1994); *State v. Harris,* 494 N.W.2d 619, 622 (S.D.1993). All conflicts in the evidence must be resolved in favor of the trial court's findings. *Century 21 Associated Realty v. Hoff-*

---

1. At the same time Tracy was charged with intentionally interfering with lawful hunting, the Ambach party was charged with trespassing. After Tracy was convicted, the State moved to dismiss the trespass charges against the Ambach party based on the trial court's finding against Tracy that the Ambach party was legally hunting when confronted by Tracy.

*man,* 503 N.W.2d 861, 864 (S.D.1993) (citing *In re Estate of Gibbs,* 490 N.W.2d 504 (S.D. 1992)); *State v. Brings Plenty,* 490 N.W.2d 261, 266 (S.D.1992) (citing *State v. Battest,* 295 N.W.2d 739, 742 (S.D.1980)).

### ANALYSIS AND DECISION

Tracy was convicted of violating SDCL 41–1–8 which provides:

> No person may intentionally interfere with any person or group of persons lawfully engaged in the process of taking or attempting to take any game or fish. No person may engage in any activity specifically intended to harass or otherwise prevent the lawful taking of any game or fish. No person may engage in any activity to scare or disturb any game with specific intent to prevent their lawful taking. This section may not be construed to prohibit a landowner from revoking a prior grant of permission to hunt on his land. A violation of any provision of this section is a Class 2 misdemeanor.

On appeal Tracy argues to this court basically the same case he presented to the trial court, *i.e.,* that the Ambach party was not lawfully hunting as authorized by SDCL 41–9–1.1 and his conduct did not constitute intentional interference. We find the statutory argument to be dispositive of this appeal.

### ISSUE I

*Whether the Ambach party was lawfully hunting?*

█ In this state there is along every section line a public highway located by operation of law unless that section line has been vacated or relocated by lawful action of an authorized public officer, board, or tribunal. SDCL 31–18–1. SDCL 31–18–2 provides the width of these statutory section line highways is sixty-six feet, thirty-three feet on each side of the section line. In *Thormods-*

*gard v. Wayne Township Bd. of Supervisors,* 310 N.W.2d 157 (S.D.1981), we held a section line highway is present wherever the section line has not been vacated and that abandonment of a statutory section line highway "cannot be established solely by evidence that the highway has never been opened, improved, or traveled." *Id.* at 159 (citing *Costain v. Turner County,* 72 S.D. 427, 36 N.W.2d 382 (1949); *Pederson v. Canton Township,* 72 S.D. 332, 34 N.W.2d 172 (1948)). As long as the section line has not been legally vacated the public has a right to travel on it. *Barney v. Burlington Northern R. Co.,* 490 N.W.2d 726, 732 (S.D.1992), *(cert. denied* by *Kaubisch v. S.D.,* — U.S. —, 113 S.Ct. 1265, 122 L.Ed.2d 661 (1993); *Gustafson & Co. v. State,* 84 S.D. 238, 242, 169 N.W.2d 722, 724 (1969); *Lawrence v. Ewert,* 21 S.D. 580, 583, 114 N.W. 709, 710 (1908).

As previously noted, the Ambach hunting party turned west from the Grey Goose Road following the section line that bisects Sheehans' farmland. At a point approximately thirty feet from the Grey Goose Road, the Sheehans' farm trail, made by Sheehan farm equipment and vehicles, veers north of the section line. Further west, the farm trail crosses over the section line and veers south of the line. Further west still, the trail veers sharply and widely to the north of the section line in order to go around a wet marshy slough which cannot be traversed by vehicle. At some point past the slough, the farm trail joins and follows once again the east-west section line bisecting Sheehans' farmland. Tracy concedes in his brief to this court that "[t]he Ambach party drove west across a cultivated field attempting to stay on the unmarked section line between Sections 29 and 32." As indicated by law previously cited above, the public has a legal right to travel along these statutory section lines. *See also* SDCL 31–25–1.1.[2] The Ambach par-

---

2. SDCL 31–25–1.1 provides:

   A landowner may erect a fence across an unimproved county, township or section-line highway. For the purposes of this section an unimproved county, township or section-line highway is any county, township or section line not commonly used as a public right-of-way and never altered from its natural state in any way for the purpose of facilitating vehicu-

   lar passage. At any point where a fence crosses such highway, the landowner shall erect and maintain an unlocked gate which may be opened easily or provide other suitable access to the highway. If the gate or other access is not large enough or if the gate does not open easily enough to satisfy the needs of those using the highway, the landowner shall erect a larger gate or a gate that can be more easily

ty drove on the section line until they came to the slough where they parked their vehicle and walked through the marshy area, continuing west on foot until they stopped to hunt geese on the section line between sections 29 and 32 of Sheehans' farmland. This is conceded by Tracy on cross-examination at trial:

Q: Do I understand from your testimony that you're not disputing that the Ambachs and their party were on the section line; is that correct?

A: No, they were on—the shell scatter [on the survey produced by Tracy] shows that they were on the section line in the place that they were standing.

Q: And where they were located both when you saw them and later as you were taking their photos, that was along a trail; was it not?

A: Yes, it was.

◼ Although the Ambach party could lawfully travel along the section line as it had not been legally vacated or relocated, whether or not they could lawfully hunt along the section line is another matter. In *State v. Peters*, 334 N.W.2d 217 (S.D.1983), (a 3–2 decision) a case also arising out of Sully County, the majority held that hunting on section lines is permitted without the consent of an adjoining landowner if either (1) the section line is improved for vehicular travel;

or (2) where the section line, although not improved, is "commonly used by the public for vehicular travel."[3]

◼ We now focus on whether this particular section line has been improved for vehicular travel as there is no question it was not commonly used by the public for vehicular travel. In *Peters*, the majority stated: "If the section line is totally unimproved for passage ... then it is not a public road for hunting and must be treated as private land. *Conversely, if it is improved at all for passage, then it is open to hunting without permission from anyone." Id.* at 221 (emphasis added).[4] This analysis was based on its interpretation of SDCL 41–9–1[5] and 41–9–1.1.

In *Peters*, the right-of-way was not commonly used as a public road. The majority held it was an improved section line allowing public hunting as it had been altered from its natural state. The court concluded that Peters, a person who was hunting on a section line, was lawfully hunting on an improved right-of-way.

In the present case, the Ambach party was hunting on a section line partially containing a farm trail. This was found by the trial court to be an improved section line as the site was "characterized by a well-worn vehicle track which provided vehicle access to Gray Goose Road...."

---

opened or provide other suitable access to the highway. The landowner shall erect the larger gate or the gate which opens easily or provide the other suitable access upon a request filed with the sheriff of the county in which the land is located by an adversely affected person. If a request is filed, the sheriff shall notify the landowner. The landowner shall comply with the provisions of this section within seven days of notice. A landowner who violates any of the provisions of this section is guilty of a Class 2 misdemeanor.

3. SDCL 41–9–1.1 states in relevant part:

Except for ... unimproved section lines not commonly used as public rights-of-way and never altered from their natural state in any way for the purpose of facilitating vehicular passage ..., § 41–9–1 does not apply to ... hunting on highways or other public rights-of-way within this state....

(See footnote 5 for text of SDCL 41–9–1). SDCL 41–9–1.1 *is not a model of clarity. However, if*

its rule is considered prior to its exception, the meaning becomes clear. *As such it states that the hunting prohibition found in* "§ 41–9–1 does not apply to ... hunting on highways or other public rights-of-way within this state .... except for ... unimproved section lines not commonly used as public rights-of-way and never altered from their natural state in any way for the purpose of facilitating vehicular passage...."

4. In *Peters*, the majority deemed that possible removal of rocks from the right-of-way together with the establishment of well defined vehicular tracks to facilitate vehicular travel constituted an improvement as contemplated by SDCL 41–9–1.1.

5. SDCL 41–9–1 provides in relevant part:

[N]o person may fish, hunt or trap upon any private land not his own or in his possession without permission from the owner or lessee of such land. A violation of this section is a Class 2 misdemeanor and is subject to § 41–9–8.

SDCL 41–9–1.1 does not define what constitutes an "improvement." In *Smith v. Sponheim*, 399 N.W.2d 899 (S.D.1987), we stated that mere travel along a road does not constitute an improvement. This conclusion is based on SDCL 31–3–2.[6] In *Sponheim*, we noted the improvements in that case consisted of widening the "road," grading and graveling it, and installing culverts and a drainage ditch. *Id.* at 902.

In *Peters*, the majority apparently construed the term "improvement" as being synonymous with "altered from its natural state in some ways, for the purpose of facilitating vehicular passage" and concluded "[a]ny alteration suffices." *Peters*, 334 N.W.2d at 222. Based on such a definition of an improvement, the majority found that tire tracks together with possible removal of rocks constituted improvements as contemplated within the terms of SDCL 41–9–1.1. As a matter of statutory construction, *Peters* erred as this interpretation would mean the phrases "unimproved section lines" and "never altered from their natural state in any way" were synonymous and they are not. We doubt the Legislature intended to define a single concept in a single statute by the use of two such different phrases.

■ We conclude the majority in *Peters* defined an "improved road" in an overly broad manner. Given the guidance furnished by *Sponheim*, we find the rationale by the dissent in *Peters* to be more persuasive. We hold that a section line is improved for the purposes of "facilitating vehicular passage" when the improvement is in the nature of intentional enhancement of the natural terrain's utility for travel or adaptation which will permit travel where it was not previously possible. Black's Law Dictionary 757 (6th ed. 1990). Clearly this requires more than "any alteration" of the land's natural state, adopted by the *Peters* majority, which may

actually make it more difficult to travel than the original state of the land. Vehicular travel can create barriers to passage such as mud holes and ruts which did not exist when the land was in its unaltered state.

The trial court failed to note SDCL 41–9–1.1 references improved section lines rather than a piece or portion of an improved section line. The legislative intent is that if one can travel down a section line because it is improved to facilitate such travel, it can be hunted upon. Clearly the Legislature did not intend to authorize hunting in situations where, in order to arrive at the hunting site on a section line, one has to abandon one's vehicle due to a deep marshy slough on the section line and impassible to vehicular travel, wade through that slough on foot, walk one-fourth mile across stubble with no tracks, and finally arrive at a set of tracks made by the landowner's machinery which happened to cross or coincide with the section line.

The tracks made by Sheehan and his employees with machinery which cross the section line at various places and go onto Sheehan's land at other places do not constitute an improvement as defined by SDCL 41–9–1.1. The statute clearly contemplates improvement in the nature of intentional enhancement of the natural terrain's utility for travel or adaptation which will permit travel where it was not previously possible, or common use of the section line, not a fortuitous crossing (for the would-be hunter) of a piece of machinery heavy enough to leave a track. The legislative grant of a right to hunt on public property does not hinge on whether the farmer can keep hunter's guns silenced by driving his tractor next to the right-of-way or inadvertently allowing the hunter to fire away by driving the tractor across the section line.

---

**6.** SDCL 31–3–2 provides:

Notwithstanding § 31–3–1, the mere use by the public of any route of travel along or across public or private land, or the right-of-way of any railroad company for any period, shall not operate to establish a public highway and NO RIGHT shall inure to the public or any person by such use thereof. (emphasis added).

We recognize that herein a highway already exists in the eyes of the law as it is an unvacated section line. SDCL 31–18–1. In *Sponheim*, the status of the "road" in question was disputed as it was not on a section line. However, the rationale of *Sponheim* is a useful tool for analysis here as in both matters, the issue of what constitutes an "improvement" versus mere use of the property plays an integral part in determining the disposition of the case.

We hold this was not an improved section line as defined by SDCL 41-9-1.1. Given our determination that the Ambach party was not lawfully hunting, we need not determine whether Tracy's actions constituted intentional interference. We reverse Tracy's conviction.

MILLER, C.J., and SABERS, AMUNDSON and KONENKAMP, JJ., concur.

Map A (continues on Map B)

SECTION LINE SURVEY
NORTH LINE OF SECTION 32, T113N, R79W
SULLY COUNTY, SOUTH DAKOTA

Map B (continuation from Map A)

SECTION LINE SURVEY
NORTH LINE OF SECTION 32, T113N, R79W
SULLY COUNTY, SOUTH DAKOTA