1996 SD 75

**Brad REIS, David Hanson, Ted Nelson, Jr., and Leonard Kjerstad, Plaintiffs and Appellants,**

v.

**Walter D. MILLER, Governor of the State of South Dakota; Mark W. Barnett, Attorney General of the State of South Dakota; and Richard J. Beringson, Secretary of the South Dakota Department of Game, Fish and Parks; all in their official capacities, Defendants and Appellees.**

**No. 19297.**

Supreme Court of South Dakota.

Argued April 23, 1996.

Decided June 19, 1996.

Bruce A. Hubbard, Hansen and Hubbard, Sturgis, for plaintiffs and appellants.

Mark W. Bennett, Atty. Gen., Craig M. Eichstadt, Deputy Atty. Gen., Pierre, for defendants-appellees.

SABERS, Justice.

[¶ 1] Reis, Hanson, Nelson and Kjerstad (Plaintiffs) appeal a denial of their declarato-

ry judgment action against state officials (Defendants) in their official capacities. Plaintiffs claim the original easement creating section line rights-of-way did not give the legislature the power to allow hunting, fishing or trapping on the section line rights-of-way and that SDCL 41–9–1.1 is a violation of equal protection. We affirm.

## FACTS

[¶ 2] Plaintiffs each own land subject to an easement for a section line highway. Reis is a resident of Tripp County, Hanson is a resident of Day County, Nelson is a resident of Sanborn County, and Kjerstad is a resident of Haakon County.

[¶ 3] Plaintiffs filed a declaratory judgment action against Defendants in their official capacities as Governor, Attorney General, and Secretary of the South Dakota Department of Game, Fish and Parks. Plaintiffs challenged the validity of SDCL 41–9–1.1 as it relates to hunting, fishing and trapping on improved section line rights-of-way.

[¶ 4] Plaintiffs presented witnesses who testified to harm by hunters. The witnesses told of a man hit by pellets, hunters shooting within 250 to 300 feet of occupied school buildings and houses, hunters shooting livestock, and hunters causing traffic congestion and damage to outbuildings and vehicles, including some shooting less than 500 feet from a combine operated during harvest. Defendants point out that the witnesses' experiences occurred over a period of fifteen years and that many of the incidents did not involve road hunting.

[¶ 5] The declaratory judgment was denied following a trial to the court. "In [review of] declaratory judgment actions, this Court 'has an obligation to reach its legal conclusions independent from the conclusions reached by the trial court.'" *Black Hills Novelty Co. v. S.D. Comm'n on Gaming*, 520 N.W.2d 70, 72 (S.D.1994) (quoting *Northwestern Bell Telephone v. Stofferahn*, 461 N.W.2d 129, 134 (S.D.1990)). Thus, we review these questions of law de novo.[1] *Id.*

---

1. Defendants argue this issue should be reviewed de novo for another reason: it addresses a statutory easement, which is a legal question. *Per-*

*mann v. Dept. of Labor*, 411 N.W.2d 113, 117 (S.D.1987).

(citing *In re SDDS, Inc.*, 472 N.W.2d 502, 507 (SD 1991); *Permann v. Department of Labor*, 411 N.W.2d 113, 117 (S.D.1987)).

[¶ 6] Generally, "no person may fish, hunt or trap upon any private land not his own or in his possession without permission from the owner or lessee of such land." SDCL 41–9–1. Here, Plaintiffs challenge the constitutionality of SDCL 41–9–1.1 on the basis that it permits hunting on improved section lines.[2] SDCL 41–9–1.1 provides:

Except for controlled access facilities as defined in § 31–8–1 and interstate highways, unimproved section lines not commonly used as public rights-of-way and never altered from their natural state in any way for the purpose of facilitating vehicular passage, or highways within parks or recreation areas or within or adjoining public shooting areas or game refuges posted for restriction of an applicable use as hereinafter set forth by the Department of Game, Fish and Parks, *§ 41–9–1 does not apply to fishing, trapping or hunting on highways or other public rights-of-way within this state.* No person, except the adjoining landowner or any person receiving written permission from the adjoining landowner, may use the highways or rights-of-way for the purposes of hunting defined in this section within six hundred sixty feet of an occupied dwelling, a church, schoolhouse or livestock. No person, except the adjoining landowner or any person receiving written permission from the adjoining landowner, may use the highways or rights-of-way for the purpose of trapping within six hundred sixty feet of an occupied dwelling, church or schoolhouse. A violation of this section is a Class 2 misdemeanor.

(Emphasis added.)

[¶ 7] Plaintiffs claim SDCL 41–9–1.1 is unconstitutional because it allows the use of a section line right-of-way in a manner inconsistent with the purpose for which it was dedicated by the United States Congress in 1866 and adopted by the South Dakota Territorial Legislature as 33 SL 1870–1871 (now SDCL 31–18–1).

[¶ 8] Plaintiffs claim the transportation easement imposed by SDCL 31–18–1 does not include the right of the general public to enter upon a section line highway for the purpose of hunting, fishing and trapping. SDCL 31–18–1 provides:

There is along every section line in this state a public highway located by operation of law, except where some portion of the highway along such section line has been heretofore vacated or relocated by the lawful action of some authorized public officer, board, or tribunal.

[¶ 9] Plaintiffs also claim a violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and Article VI, § 18, of the South Dakota Constitution. We first address the scope of the easement granted by the Highway Act.

[¶ 10] **1. Whether hunting, fishing and trapping are included in the public right-of-way on improved section lines in South Dakota.**

[¶ 11] Section line rights-of-way originated with federal legislation. In 1866, Congress declared: "The right of way for the construction of highways over public lands, not reserved for public uses, is hereby granted." § 8, Ch 262, 14 Stat 253, 43 USCA § 932; *Costain v. Turner County*, 72 S.D. 427, 428, 36 N.W.2d 382, 383 (1949).

The legislature of Dakota Territory enacted Ch 33 SL 1870–1871 stating: "That hereafter all section lines in this Territory shall be and are hereby declared public highways as far as practicable...." The law in effect at the time provided that public highways along section lines "shall be sixty-six feet wide and shall be taken equally from each side of the section line" unless changed as provided by law. § 27, Ch 13, SL 1867–1868 as amended by Ch 14, SL 1874–1875; SDC 28.0105. The federal statute made the dedication, the territorial statute accepted it, and at the same time designated the location of highways. *Costain*, 72 S.D. at 428–29, 36 N.W.2d at 383. "SDCL 31–18–2 provides the width of these

---

**2.** SDCL 41–9–1.1 has been amended by the 1996 South Dakota Legislature, which amendment is not material to this case. *See* 1996 SDSessL ch 252, § 1.

statutory section line highways is sixty-six feet, thirty-three feet on each side of the section line." *State v. Tracy*, 539 N.W.2d 327, 329 (S.D.1995). "As long as the section line has not been legally vacated the public has a right to travel on it." *Id.* (citing *Barney v. Burlington Northern R.R. Co., Inc.*, 490 N.W.2d 726, 732 (S.D.1992), (*cert. denied* by *Kaubisch v. South Dakota*, 507 U.S. 914, 113 S.Ct. 1265, 122 L.Ed.2d 661 (1993)); *Gustafson & Co. v. State*, 84 S.D. 238, 242, 169 N.W.2d 722, 724 (1969); *Lawrence v. Ewert*, 21 S.D. 580, 583, 114 N.W. 709, 710 (1908)).

[¶ 12] Plaintiffs claim that the 1866 Highway Act easement does not, and the South Dakota statutes should not, include hunting, fishing, trapping and other recreational activities as part of the highway right-of-way. They claim the territorial legislation and SDCL ch 31–18 should be strictly construed so the legislature has no right to expand the easement to include public hunting. Plaintiffs argue the absence of language in the territorial legislation granting the right to hunt, fish or trap is important. They claim if those activities were meant to be included in the easement, the legislation would have specifically mentioned them, particularly in the 1870's when hunting and trapping were not merely leisure activities but were necessary to provide food and clothing. Defendants claim such activities were part of the highway easement.

[¶ 13] The trial court applied four "rules of construction" to determine the scope of the Highway Act easement. First, the trial court considered that public easements granted by Congress are not common law easements. *Barney*, 490 N.W.2d at 730 (discussing railroad rights-of-way under the General Right-of-Way Act of 1875, 43 USC § 934). The trial court noted public easements are subject to the intent of Congress and are governed by state law, not the common law rules of easements. "In interpreting statutory language, conveyances by the government are to be construed to carry out the intent of the grantor." *Id.* at 731. Second, the trial court noted that interpretations of statutory section lines, like SDCL 31–18–1 and –2 have, since statehood, "been construed liberally in favor of the right of the

public to have access to, and use of, section lines." *State v. Peters*, 334 N.W.2d 217, 222 (S.D.1983) (citing *Costain*, 72 S.D. at 427, 36 N.W.2d at 382). Third, the *Peters* court stated, " 'in ascertaining the intention of the statute, the court's interpretation should not prejudice the public interest or impair an existing right unless language within the statute requiring it to have such operation is so clear that no reasonable doubt can exist of such intention.' " *Id.* (quoting *State Theatre Co. v. Smith*, 276 N.W.2d 259, 263 (S.D. 1979)). Fourth, the trial court noted that the *Peters* court specifically rejected the argument that "the usual liberal construction allowing public use of section lines cannot be extended to this section line because it benefits only hunters and goes nowhere from the east end." *Id.*

[¶ 14] Several South Dakota cases have addressed the Highway Act easement. In *Sample v. Harter*, 37 S.D. 150, 156 N.W. 1016 (1916), a landowner attempted to stop improvement of section line roads, which was sought to gain public access to a lake. The landowner argued the section lines were not "practicable" for use as highways because they led only to the lake and the public had "no ownership or beneficial interest in [the] lakes that would warrant the expenditure necessary to make [the] highways passable." *Sample*, 37 S.D. at 154, 156 N.W. at 1017. This court held the lakes were navigable and therefore belonged to the State for the benefit of all people. The court held that it was "practicable" to expend funds to make a section line passable so that the public could use them to reach the lakes for "boating, fishing, fowling, bathing, and taking ice[.]" *Id.*, at 154, 156 N.W. at 1018.

[¶ 15] In *Peters*, this court reversed a conviction for hunting without the landowner's permission because the defendant had been hunting within the 66–foot section line which was "improved," under the meaning of SDCL 41–9–1.1. The *Peters* court stated, "[t]he right to road hunt is not an exception to SDCL 41–9–1[,]" because the permission requirement of SDCL 41–9–1 applied only if the section line was unimproved. *Peters*, 334 N.W.2d at 221. "We proceed therefore to treat the right to hunt on highways as the

general rule." *Id.* The *Peters* court recognized that the exception for hunting only on improved section lines balanced the "traditional South Dakota right to road hunt" with prevention of "unreasonable intrusions." *Id.*

[¶ 16] More recently, in *Tracy*, 539 N.W.2d 327, this court reversed a conviction for intentionally interfering with hunting. We held the section line used by the hunters was not improved and that the party was not lawfully hunting. The section line had been used as a farm trail, but a slough on the right-of-way of the section line prevented passage. We narrowed the definition of "improved" as used in *Peters* to mean improvements "in the nature of intentional enhancement of the natural terrain's utility for travel or adaptation which will permit travel where it was not previously possible." *Tracy*, 539 N.W.2d at 331 (citing Black's Law Dictionary 757 (6th Ed1990)).

[¶ 17] Plaintiffs urge this court to adopt the North Dakota Supreme Court's holding that hunting on a section line was not incidental to the public's right to travel. *Rutten v. Wood*, 79 N.D. 436, 57 N.W.2d 112 (1953). The *Rutten* court noted that the section line in question was opened for highway purposes, but that the landowner held fee simple title.[3] *Id.* 57 N.W.2d at 113. The landowner posted "no hunting" signs on the land on both sides of the section line, "as provided by law." [4] *Id.* at 112. The hunter shot geese flying across the roadway and the landowner's field and entered the field to retrieve the geese. The *Rutten* court quoted the Minnesota Supreme Court, and stated:

"But we may safely assume that the killing of game belonging to the adjacent premises, and found temporarily in the highway, is in no manner connected with or incidental to the public right of passage and transportation. While true that the title to all wild game is in the state, and the owner of premises whereon it is located has only a qualified property interest therein, yet he has the right to exercise exclusive and absolute dominion over his property, and incidentally the unqualified right to control and protect the wild game thereon. . . . [T]he elementary rule on this subject was stated as follows: 'Every person has exclusive dominion over the soil which he absolutely owns; hence such an owner of land has the exclusive right of hunting and fishing on his land, and the waters covering it.' It necessarily follows that, in dedicating the highway in question to the public, respondent reserved to itself all of the other privileges and rights pertaining to the premises, which included the right to foster and protect, for its own use, the wild game thereon, and that such right and privilege were in no manner surrendered to the public in granting the easement. It also follows that the public, including appellant, in accepting the easement thus granted, acquired *no right to kill or molest the game inhabiting the property while it was passing to and fro across the highway.*"

*Rutten*, 57 N.W.2d at 114 (citations omitted) (quoting *L. Realty Co. v. Johnson*, 92 Minn. 363, 100 N.W. 94, 95 (1904)).[5]

---

3. The *Rutten* court cited the following general rule in North Dakota:

"In the absence of a statute expressly providing for the acquisition of the fee, or of a deed from the owner expressly conveying the fee, when a highway is established by dedication or prescription, or by the direct action of the public authorities, the public acquires merely an easement of passage, the fee title remaining in the landowner."

*Rutten*, 57 N.W.2d at 113 (quoting 25 AmJur Highways § 132 at 426). The South Dakota Constitution provides that fee title to land taken for highways remains in the landowners. SD Const Art VI, § 13.

4. North Dakota law provided that it was permissible to enter posted land to retrieve game killed from land where the person had a lawful right to

hunt, but that it was a misdemeanor to hunt or pursue game without permission on any land which was legally posted. *Rutten*, 57 N.W.2d at 114.

5. North Dakota statutes now provide: "No person, while hunting big game or small game, other than waterfowl or cranes, statewide, may drive through any retired cropland, brush area, slough area, timber area, open prairie, or unharvested or harvested cropland, except upon an established road or trail." NDCentCode § 20.1–01–07 (1991). An "established road or trail" is defined as: "any public highway or road, improved or otherwise, dedicated for public ingress or egress, or any other road or trail normally used for travel but does not include temporary trails across cultivated land used for agricultural purposes." NDCentCode § 20.1–01–02(11)

[¶ 18] The *Rutten* court also considered the danger from "'hunters, often irresponsible and reckless'" to adjoining landowners who had to use the highway for travel. *Id.* 57 N.W.2d at 115 (quoting *Whittaker v. Stangvick,* 100 Minn. 386, 111 N.W. 295, 297 (1907)). As indicated, Plaintiffs here presented witnesses to show hunting was detrimental to travel and safety of adjoining landowners. Defendants point out that most of the incidents did not involve road hunting and were already violations of current law, which prohibits hunting within 660 feet of livestock, dwellings, churches and schools. Defendants concede that such violations are difficult to police, but point out that a complete ban on road hunting would be equally difficult to enforce.

[¶ 19] The trial court declined to adopt North Dakota's analysis in *Rutten* because this court had spoken in strong terms of the public's right to road hunt in *Peters.* We also decline to adopt the North Dakota analysis. The legislature and this court have recognized the right to use public highways for recreational purposes. The use by the public of the section line rights-of-way for recreation, which includes hunting, dates back to the 1880s and has not been successfully challenged in this state to our knowledge.

■ [¶ 20] Plaintiffs ask this court to overturn the "dicta" in *Peters,* 334 N.W.2d 217. While *Peters* was limited in *Tracy,* the limitation did not alter the *right* to hunt on improved section lines, but merely modified the definition of improved section lines. As stated above, this court has liberally construed statutes defining public highways "in favor of the right of the public to have access to, and use of, section lines." *Peters,* 334 N.W.2d at 222 (citations omitted). We combine a broad reading of the easements for public use with legislative and judicial recognition of recreational use of public highways and conclude that hunting, fishing and trapping are included in the public right-of-way easements in South Dakota. We further conclude that it is the appropriate function of the South Dakota Legislature to determine the extent of the recreational easement.

[¶ 21] **2. Whether SDCL 41–9–1.1 violates the Equal Protection Clause of the South Dakota and United States Constitutions.**

■ [¶ 22] Plaintiffs claim SDCL 41–9–1.1 discriminates against the rights of landowners who own improved section lines, denying them equal protection of the law under the Fourteenth Amendment to the United States Constitution and Article VI, § 18, of the South Dakota Constitution.

[¶ 23] The trial court held Plaintiffs did not have standing to "attack the constitutionality ... of a legislative decision to not criminalize conduct for which, ... there would be a civil remedy if it is a trespass." The trial court cited *Linda R.S. v. Richard D.,* 410 U.S. 614, 93 S.Ct. 1146, 35 L.Ed.2d 536 (1973), where the United States Supreme Court considered a claim of discriminatory application of a Texas statute which criminalized failure to support children. The plaintiff, mother of an illegitimate child, sought an injunction forbidding the prosecuting attorney from failing to prosecute fathers of illegitimate children while prosecuting fathers of legitimate children. The Court addressed standing:

> [I]n the unique context of a challenge to a criminal statute, appellant has failed to allege a sufficient nexus between her injury and the government action which she attacks to justify judicial intervention. To be sure, appellant no doubt suffered an injury stemming from the failure of her child's father to contribute support payments. But the bare existence of an abstract injury meets only the first half of the standing requirement. "The party who invokes judicial power must be able to show ... that he has sustained or is immediately in danger of sustaining some *direct* injury *as the result of* [a] statute's enforcement." *Massachusetts v. Mellon,* 262 U.S. 447, 488, 43 S.Ct. 597 [601] 67 L.Ed. 1078 (1923) (emphasis added).

*Linda R.S.,* 410 U.S. at 617–18, 93 S.Ct. at 1149, 35 L.Ed.2d at 541.

(1991 & Supp1995). Minnesota statutes also apparently allow road hunting. *See* MinnStat §§ 97B.001 (1987 & Supp1996), 97B.055 (1987 & Supp1996).

[¶ 24] Defendants argue this court should adopt the trial court's position, which quoted the following language from *Linda R.S.*: "The Court's prior decisions consistently hold that a citizen lacks standing to contest the policies of the prosecuting authority when he himself is neither prosecuted nor threatened with prosecution." *Id.* at 619, 93 S.Ct. at 1149, 35 L.Ed.2d at 541. The trial court noted that the legislature is the prosecuting authority in this situation. However, we note that the United States Supreme Court did not address *legislation* but its *application by the prosecutor.* At any rate, Plaintiffs did not cite any authority to persuade us that the trial court's determination that they did not have standing was in error. Therefore, we affirm.

[¶ 25] MILLER, C.J., and AMUNDSON and KONENKAMP, JJ., concur.

[¶ 26] GILBERTSON, J., concurs with writing.

GILBERTSON, Justice (concurring).

[¶ 27] I fully concur with the analysis and result of the majority opinion. I write separately only to present additional analysis which I believe also supports the majority conclusion. It is clear that South Dakota has a tradition of allowing hunting except where the Legislature has chosen to restrict or prohibit it.

[¶ 28] Historically, there is no support for the contention of the Plaintiffs that the Territorial Legislature in 1870, when accepting the rights-of-way easement from the Federal Government by enacting what is now SDCL 31–18–1, somehow intended to limit or preclude hunting from these ribbons of real estate. During the Territorial period, no limitations can be found on hunting anywhere although I presume that a landowner could maintain an action for trespass for entering on his land without his permission. *See Clark v. Bates,* 1 Dakota 42, 46 N.W. 510 (1874), *aff'd,* 95 U.S. 204, 24 L.Ed. 471 (1877). However, acts committed within the section line were not held to be a trespass upon the adjoining landowner's real property. *State v. Bonine,* 41 S.D. 231, 170 N.W. 138 (1918). As to wild game specifically, it was not until

1899 that the South Dakota Legislature passed its first limitation on hunting anywhere in the State, by requiring the owners' permission to hunt on private land. *See* SDCL 41–9–1.

[¶ 29] At common law, wild game was deemed to be the property of the sovereign or state and not of the private real property owner. *State v. Pollock,* 42 S.D. 360, 365, 175 N.W. 557, 558 (1919). Therein we stated:

> This power of the state is based largely on the circumstance that the property right to the wild game within its borders is vested in the people of the state in their sovereign capacity; and as an exercise of its police powers and to protect its property for the benefit of its citizens, it is not only the right, but it is the duty of the state to take such steps as shall preserve the game from the greed of hunters.... The right to kill the game is a boon or privilege granted either expressly or impliedly by the sovereign authority and is not a right inhering in any individual....

42 S.D. at 365–66, 175 N.W. at 559 (quoting 12 RCL 685). This common law doctrine was reinforced in 1899 by the passage of what is now SDCL 41–1–2, which provides in part, that "any game bird, game animal, or game fish ... shall always and under all circumstances be and remain the property of the state...."

[¶ 30] Eighty-two years were to go by until the Legislature sought to limit hunting within certain rights-of-way simply because of that realty's status by the amendment of SDCL 41–9–1.1 to that effect. *State v. Peters,* 334 N.W.2d 217, 221 (S.D.1983). Prior to that time, the only applicable statutory hunting restrictions in existence were those generally pertaining to hunting such as bag limits or for the protections of farm buildings, fields and schools. *See* SDC 1939, § 25.0427.

[¶ 31] Thus, the claim that somehow in the 1870's or at anytime thereafter, the Dakota Territorial Legislature or the South Dakota Legislature intended to preclude all public hunting within public rights-of-way is without any supporting authority—all authority points to the contrary. Some might have

wished that those Legislatures had spoken differently, but we cannot remake history. *DeCoteau v. District County Court,* 420 U.S. 425, 449, 95 S.Ct. 1082, 1095, 43 L.Ed.2d 300, 317 (1975).